**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 93-8167
_____

UNITED STATES OF AMERICA,

Plaintiff/Appellee,

VERSUS

WOODROW WILSON BAKER, JR.

Defendant/Appellant.

_____

Appeal from the United States District Court
For the Western District of Texas
_____

Before POLITZ, KING and DAVIS, Circuit Judges.

DAVIS, Circuit Judge:

Woodrow Wilson Baker, Jr. challenges his conviction of two counts of aiding and abetting attempted bank robbery. For the reasons that follow, we affirm.

I.

Woodrow Wilson Baker, Jr. drove 11-year old Ricardo Constancio, Jr. to the Guaranty National Bank in Killeen, Texas and gave Ricardo a note to give to a teller. The note read:

> Please put all of your following bills in my bag: tens, twenty's, fifty's, hundred's. Don't put any dye or gas bombs. Please don't make me make this place red with blood. Don't think because I am small I can't do this. Please don't make [me] prove it.

Ricardo, who was 4 feet, 8 inches tall, weighed 70-80 pounds, and was dressed in an oversized t-shirt and jeans, did not read the note.

The teller, Barbara Hawkins, recognized Ricardo because he had been at the bank earlier picking up coin wrappers at Baker's behest. When he gave her the note, she was surprised and incredulous and asked who had written it. He told her to keep reading. After reading the note, Hawkins told Ricardo she was going to make a copy of it, and he demanded the note back. She testified that she "was skeptical about turning my back, but I just had -- I felt I had to get a copy of the note." She was unable to make a clear copy because the note was written on a brown paper bag. When she returned to the counter, Ricardo, ready to leave, demanded that she return the note. Hawkins wanted to keep it for "evidence" but gave it back to Ricardo because she felt threatened; she testified that her "knees kind of buckled." Ricardo left the bank.

Baker then drove Ricardo to the Round Rock Bank and told him if he "messed this up, he was really going to do something bad" to the boy. By this time, Ricardo had seen enough of the note to realize that it demanded money. He presented it to a teller, Cindy Keim, who asked Ricardo, "Why are you doing this?" but Ricardo just stood and smiled. Keim also testified that Ricardo's eyes were bloodshot and that she didn't know if he was under the influence of something. Keim decided the note was serious and started to give Ricardo some money, but she changed her mind when the bank security officer approached and began talking to Ricardo. She tripped the alarm and took the note to her supervisors, telling them that "it's real, he's out there." While she was gone, Ricardo left the bank.

Baker was indicted for two counts of aiding and abetting

2

attempted bank robbery in violation of 18 U.S.C. § 2113(a) and 18 U.S.C. § 2. A jury convicted him of both counts, and he was sentenced to a total of 262 months imprisonment followed by three years of supervised release. Baker timely appealed.

## II.

Baker first challenges his conviction on the ground that Ricardo would not have intimidated a reasonable person under the circumstances, and that therefore, the government failed to prove an essential element of the crime for which he was convicted. In evaluating the sufficiency of the evidence, this court must determine whether a rational jury could have found evidence establishing intimidation beyond a reasonable doubt. **United States v. Ivey**, 949 F.2d 759 (5th Cir. 1991), **cert. denied**, __ U.S. __, 113 S. Ct. 64 (1992). This court considers the evidence in the light most favorable to the verdict, accepting all reasonable inferences that support the jury's verdict. **Glasser v. United States**, 315 U.S. 60, 80, 62 S. Ct. 457 (1942).

In order to prove a violation of 18 U.S.C. § 2113(a), the government must prove: 1) an individual or individuals, 2) used force and violence, or intimidation, 3) to take or attempt to take, 4) from the person or presence of another, 5) money, property, or anything of value, 6) belonging to or in the care, custody, control, management or possession, 7) of a bank, credit union, or savings and loan association. **United States v. Van**, 814 F.2d 1004, 1005-06 (5th Cir. 1987). Under § 2113(a), bank robbery is made criminal when it involves "force and violence, or intimidation":

> Intimidation occurs when one individual acts in a manner that is reasonably calculated to put another in fear. . . . [F]rom

3

> the perspective of the victim, a taking 'by intimidation' under section 2113(a) occurs when an ordinary person in the teller's position reasonably could infer a threat of bodily harm from the defendant's acts.

**United States v. Higdon**, 832 F.2d 312, 315 (5th Cir. 1987)(internal quotations omitted), **cert. denied**, 484 U.S. 1075 (1988).

Baker argues that a reasonable person would not have been intimidated by a young, small, mild-mannered boy who was dressed in clothing that made it apparent he was not hiding a gun. He relies on **United States v. Wagstaff**, 865 F.2d 626 (4th Cir. 1989), **cert. denied**, 491 U.S. 907, in which a conviction for bank robbery was overturned for insufficiency of evidence of intimidation. In **Wagstaff**, a man entered the bank, put on a ski mask, walked into the teller's area and began taking money from the cash drawer. He was never close to a teller, presented no note, carried no weapon, and said nothing to anyone. The Fourth Circuit held that although the nearest teller said she felt frightened, these facts were insufficient to constitute intimidation because her fear was not a "reasonable fear of bodily harm based on the acts of the defendant." **Id.** at 629.

This case is distinguishable. Ricardo presented a note containing an express threat of bodily injury. Although both tellers testified that at first they did not believe the boy was serious, they both became fearful and felt threatened. The first teller testified that she was hesitant to turn her back on the boy, and that her knees buckled. The second teller testified that she was ready to give Ricardo money when the security officer approached. Evidence that the perpetrator's acts "did induce fear in an individual victim is probative of whether his acts were

4

objectively intimidating." **Higdon**, 832 F.2d at 315.

Making all inferences in favor of the verdict, a reasonable jury could rationally find intimidation. As the government argued in closing, it is not necessary to show that the intimidating behavior was so violent as to cause terror, panic or hysteria. The government need show only that an ordinary person in the teller's position would feel a threat of bodily harm from the perpetrator's acts.

The language of the note was frightening. It threatened, "to make this place red with blood." Although Ricardo was young, the note expressly advised the tellers not to dismiss his ability to carry out the threat because of his size. The evidence does not establish that Ricardo was incapable as a matter of law of committing violence in accordance with the express threat in the note. The jury saw Ricardo and heard him testify. They also heard the evidence, including the bank tellers' testimony concerning all the circumstances surrounding the incidents. The jury was therefore in a unique position to evaluate the reasonableness of the tellers' assertions of intimidation. We decline to second guess their finding on this issue.

### III.

Baker next challenges the jury instructions, arguing that the jury was told it could convict on the basis of Baker's intimidation of Ricardo, rather than Ricardo's intimidation of the bank tellers. When reviewing the propriety of a jury instruction, this court determines whether the charge, as a whole, is a correct statement of the law. **United States v. Stacey**, 896 F.2d 75, 77 (5th Cir.

5

1990).  As long as the jury charge accurately reflects the law and the facts of the case, a district judge is vested with broad discretion in formulating the charge, and this court will not lightly disturb the district court's judgment.  **United States v. Casto**, 889 F.2d 562, 566 (5th Cir. 1989), **cert. denied**, 493 U.S. 1092 (1990).

In its jury charge, the trial court first instructed the jury that "§ 2113(a) makes it a crime for anyone to take or attempt to take from the person or presence of another, by force or violence or by intimidation, any money in the possession of a federally insured bank."  The court then explained the four elements of the offense:

> First, that the Defendant knowingly, intentionally, and willfully caused Ricardo Constancio to attempt to take money from the person or presence of [the named teller] on or about July 31, 1992;
> Second, that the money was then in the possession of [the bank];
> Third, that [the bank] is a federally insured bank; and
> Fourth, that the Defendant or Ricardo Constancio did so by means of force or violence or by means of intimidation.

At trial, Baker objected to court's above explanation of the fourth element.  He argues here that this part of the charge is erroneous because the disjunctive language, "Defendant or Ricardo Constancio did so," allowed the jury to find the necessary intimidation based on Baker's intimidation of Ricardo rather than based on Ricardo's intimidation of the tellers inside the banks.

The government contends that reading the charge as a whole, the most logical construction is that Baker aided or abetted Ricardo in taking money from the bank by intimidation.  The government argues that the court made this clear when it instructed

6

that "the essence of the offense is the taking of money ... aided and accompanied by intentional, intimidating behavior on the part of the defendant."  The government argues that this shows that the court linked the acts of intimidation to the taking of the money.

In the court's explanation of the fourth element of the offense, the government contends that the court sought to focus on Ricardo's acts of intimidation rather than Baker's threats against Ricardo.  The government argues that the term "did so" relates back to the taking of the money and refers to the way the money was taken.  The government argues that the use of the word "or" is appropriate because Baker actually wrote the threatening note used by Ricardo.  In other words, the government contends that a reasonable jury would understand this language as an instruction that the jury could convict if it found that Baker, acting through Ricardo, intimidated the tellers.

The closing argument reflects that the government advanced this interpretation of the charge to the jury.  The prosecutor told the jury that "it's not an issue or important to this trial whether Baker threatened the boy to commit the crime or whether Baker ... just persuaded him to and the boy went along on his own without being threatened."  The government described the intimidation as coming from the note:  "That note caused each one of [the tellers] to take notice and to -- as one of them said, it began to sink in and it frightened them."

Although the charge is not a model of clarity, it is an adequate statement of the law, and the court did not abuse its discretion in the formulation of the charge.  The instruction

7

informed the jury that § 2113(a) makes it a crime for anyone to attempt to take money by intimidation from a federally insured bank. The charge then adequately conveyed to the jury that it could find either Baker or Ricardo responsible for the intimidation if it accepted the evidence that Baker wrote the note and Ricardo presented it. Based on the charge as amplified by the prosecutor's argument, we are satisfied that the jury was not misled into believing that it could convict Baker based on his intimidation of Ricardo.

IV.

Finally, Baker argues that the conviction must be overturned because a fatal variance existed between the indictment and the proof upon which defendant was convicted. He argues that the indictment named Ricardo Constancio, but the proof showed that the principal was his son, Ricardo Constancio, Jr.

In this case, unlike in **United States v. Salinas**, 654 F.2d 319 (5th Cir. 1981), **overruled on other grounds in U.S. v. Adamson**, 700 F.2d 953 (5th Cir. 1983) on which Baker relies, there is no question that the defense, the prosecution and the jury knew that the Ricardo Constancio named in the indictment and shown to be involved in the robbery was the son, whether there was a "Jr." attached to the name or not. The concern underlying the constructive amendment doctrine, that the Fifth Amendment guarantees the right to be tried only on the grand jury indictment, is not implicated under these circumstances.

Nor is the variance between the two names material. A variance is material only if it prejudices the defendant's

8

"substantial rights," either by surprising the defendant at trial or by placing him at risk of double jeopardy. **Berger v. United States**, 295 U.S. 78, 82 (1935); **overruled on other grounds, U.S. v. Stirone**, 361 U.S. 212 (1960); **United States v. Richerson**, 833 F.2d 1147, 1155 (5th Cir. 1987). Here, the defendant's ability to defend himself was not affected because there was never any question about who Baker had aided and abetted in the attempted robbery.

AFFIRMED