IN THE UNITED STATES COURT OF APPEALS
for the Fifth Circuit
No. 93-7757
(Summary Calendar)

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PAUL MARTIN MCCARTY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
_____

(October 25, 1994)

DUHÉ, WIENER and STEWART, Circuit Judges.

PER CURIAM:

Paul Martin McCarty was convicted by jury of two counts of bank robbery and one count of use of a firearm during a bank robbery. He was sentenced to serve a 175-month concurrent term of imprisonment on each of the bank robbery counts, and to serve a consecutive term of 60 months on the firearm offense, for a total of 235 months imprisonment. McCarty appeals his conviction and sentence, asserting as error the following issues: (1) admission of Rule 404(b) evidence, (2) sufficiency of evidence to prove element of "force and violence, or intimidation", (3) denial of motion to suppress, (4) admission of search-warrant affidavit into evidence, (5) cumulative error, and (6) sentencing

errors and double jeopardy.  Finding no reversible error, we affirm.

FACTS

On December 23, 1992, a man walked into the Sunburst Bank in Jackson, Mississippi.  The man wore a black wig and fake beard, tennis shoes, coveralls, and black gloves.  He carried a black bag which had a zippered opening.  He walked up to Robin Dunaway, a teller, handed her a note and indicated that she was to give him money from her two cash drawers.  He did not speak to her, but did use gestures to wave her past the security bait bills and the dye pack.  The man put the money into the black bag, retrieved the note, and left the bank.  A subsequent audit disclosed that $13,816 was missing from Dunaway's cash drawer.

A few days later, on December 28, 1992, a stolen rental car was located.  It was a 1992  Ford Thunderbird.  Whoever stole the car apparently had a duplicate set of keys, because the rental agency still had its keys when the car was stolen, and there was no damage to the recovered vehicle and no evidence of forced entry.  In its trunk were the following:  a black wig, fake beard and mustache; blue coveralls; tennis shoes; a .38 caliber revolver; a white clasp envelope, approximately 8 x 10 inches large; and .38 caliber practice rounds were found in the envelope and in the pockets of the coveralls. The white envelope was submitted for fingerprint analysis.  When checked, the rental records for the Thunderbird revealed that the only local person who had recently rented the vehicle before it was stolen was Paul McCarty.  McCarty had rented the vehicle on November 23, 1992, and returned it on November 30, 1992.

On December 29, 1992, Paul M. McCarty purchased a blue 1993 Chevrolet pick-up truck for $18,272.01.  He was allowed $1,500 on a trade in, and he paid a down payment of $7,295.01 via a cashier's check.

On February 11, 1993, a blue pick-up truck turned onto a dead-end street.  The driver turned into the driveway of a residence, triggering motion detection lighting.  The driver then turned off the truck's headlights, backed out of the driveway to turn the truck around, and parked the truck.  Two women watched from the window of their home as the man, who had turned into their driveway, got out of the truck and walked to a nearby street, toward the Magnolia Federal Bank.  About 15 to 20 minutes later, he returned to the truck and drove away.

The next day, a man entered and robbed the Magnolia Federal Bank.  He was wearing a black wig and fake beard, tennis shoes, and coveralls.  He carried a black bag with a zippered opening.  The man handed a typewritten note to the teller and, when she "froze", he displayed a .45 caliber firearm.  This time, he demanded cash from three tellers.  The man left the bank on foot and got on a bicycle.  A bank customer chased him.  At some point, the man stopped and searched his bag.  In the process, he emptied some of the money out onto the ground.  The customer who followed him hid between cars, heard gun fire--approximately two shots--and assumed that the bank robber had retrieved a firearm from the black bag and fired it.  The bank robber got away.

3

However, approximately $8,000 of the stolen money was recovered from the ground.

Meanwhile, the fingerprints found on the white envelope were identified as those of McCarty. On February 24, 1993, a warrant issued to arrest him, and to search his apartment and his blue Chevrolet truck. The affidavit in support of the warrants stated much of the above facts. McCarty was arrested and the searches were performed on February 25, 1993. Among the items seized were two sets of keys found in the blue Chevy truck.

Paul Martin McCarty was charged in an indictment with (count 1) robbery of the Sunburst Bank on December 23, 1992, in violation of 18 U.S.C. § 2113(a); (count 2) robbery of the Magnolia Federal Bank and jeopardizing the lives of bank employees by the use of a dangerous weapon on February 12, 1993, in violation of 18 U.S.C. §§ 2113(a) and (d); (count 3) use of a firearm during a bank robbery on February 12, 1993, in violation of 18 U.S.C. § 924(c)(1); (count 4) money laundering; and (count 5) forfeiture.

While incarcerated on these charges, McCarty shared a cell block with Alan Lucero. Lucero notified his attorney that McCarty had threatened certain witnesses and had described how he committed the bank robberies. Lucero testified at trial. According to Lucero, McCarty said he had taken the .38 and .45 caliber guns, as well as a .22 caliber gun, during two residential burglaries. Lucero also testified that McCarty said he had rented a Lincoln car and duplicated the keys, and had

4

later stolen the Lincoln and used it for the Magnolia Federal Bank robbery.  Based upon this information from Lucero, law enforcement officers located the stolen Lincoln and found in its trunk the .45 caliber semi-automatic gun, a .22 caliber gun, a typewriter and typewriter ribbon, a wig and fake beard, coveralls, and tennis shoes.  One set of the keys that were found in McCarty's blue truck fit the stolen Lincoln.

After trial, the jury convicted him of counts 1, 2, and 3 but found him not guilty of count 4.  The Government dismissed count 5.  McCarty was sentenced to a total of 235 months imprisonment.  McCarty appeals his conviction and sentences.

DISCUSSION

ADMISSION OF RULE 404(B) EVIDENCE

McCarty asserts that the district court improperly allowed admission of three types of extrinsic evidence.  First, the court permitted testimony about two burglaries which Lucero said McCarty described.  Second, the court permitted introduction of a .22 caliber pistol which had no connection to any of the charged offenses.  Third, the court permitted Lucero to testify that McCarty had threatened certain witnesses.

The district court's decision to admit extrinsic offense evidence under Federal Rule of Evidence 404(b) will not be disturbed absent a clear showing of abuse of discretion.  United States v. Bermea, 30 F.3d 1539, 1994 W.L. 45991 (5th Cir., No. 92-7349, Aug. 25, 1994), citing United States v. Bruno, 809 F.2d 1097, 1106 (5th Cir.), cert. denied, 481 U.S. 1057, 107 S.Ct.

5

2198, 95 L.Ed.2d 853 (1987).  Federal Rule of Evidence 404(b)

provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, . . .

We review alleged violations of Rule 404(b) under the two-pronged

test of United States v. Beechum, 582 F.2d 898, 911 (5th Cir.

1978) (en banc), cert. denied, 440 U.S. 920, 99 S.Ct. 1244, 59

L.Ed.2d 472 (1979).  That test requires that we verify (1) that

the evidence of extraneous conduct is relevant to an issue other

than a defendant's character, and (2) that it is not

substantially outweighed by its undue prejudice and is otherwise

admissible under Rule 403.[1]  Bermea, citing Beechum.

In order to determine relevance under the first prong, we

must address the threshold question of whether the government

offered sufficient proof demonstrating that the defendant

committed the alleged extrinsic offense.  U.S. v. Ridlehuber, 11

F.3d 516, 522 (5th Cir. 1993), citing Beechum, 582 F.2d at 911.

If the proof is insufficient, the judge must exclude the evidence

because it is irrelevant.  Ridlehuber, 11 F.3d at 523, quoting

Beechum, 582 F.2d at 913.  Rule 104(b) supplies the standard for

---

[1]  Federal Rule of Evidence 403 provides as follows:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

determining the admissibility of extrinsic offense evidence: "the preliminary fact can be decided by the judge against the proponent only where the jury could not reasonably find the preliminary fact to exist." Id. The second prong of the Beechum analysis inquires whether Rule 403 has been satisfied, and we must take care not to infringe upon the "broad discretion" of the trial court regarding the relevance, probative value, and prejudicial effect of evidence. Bermea (citations omitted).

We shall first examine the challenged testimony about the burglaries. Vicky Phillips testified that her three-story Rankin County house looks like a two-story house from the front because two stories are built into a hillside so that it is actually three stories in the back. She stated that her house had been burglarized on November 30, 1992, and that the .45 caliber and .22 caliber guns, recovered from the Lincoln, belonged to her and her husband. Phillips verified that the serial numbers of the .45 and the .22 matched those from her records. Barry Wood testified that he had a single-story house in Rankin County that was burglarized on November 30, 1992, and that the .38 caliber Charter Arms revolver, recovered from the Thunderbird, belonged to him. However, on cross-examination, he admitted that the only reason he identified the revolver as his own is that he had been informed that the revolver was traced back to the store where he purchased it. Neither witness knew who had taken the guns, and neither witness could identify McCarty.

The government argued that the burglaries were committed in the planning and preparation for the charged offenses, that Lucero had already testified that McCarty told him about the two burglaries, and that this testimony is admissible for the purpose of corroborating the confession that McCarty made to Lucero.

The district court allowed admission of the testimony as corroboration of the testimony of Lucero, even though it stated that it was difficult to precisely distinguish whether the acts were exclusively extrinsic. After the jury retired for deliberations, the district court stated the following:

> I have concluded or I expressed to you that I had concluded that Rule 404(b) is applicable and I so instructed the jury with the approval of counsel for the defendant. The record, of course, does reflect that counsel for the defendant did object to the testimony being admitted. I did not make the Beachum [sic] findings at the time that I admitted the evidence frankly because I hadn't decided that the testimony was admissible on that basis in addition to the ground upon which I admitted it at the time.
>
> I do now find that in addition to the reason previously given, the testimony was probative and admissible under 404(b) to show plan or preparation for the robberies that were committed and that under 403 the probative value was not substantially outweighed by the danger of unfair prejudice.

The .45 and .22 caliber guns were positively identified by Phillips. They had been recovered from the stolen Lincoln which McCarty had rented, along with a typewriter, wig and fake beard, and other items which Lucero testified that McCarty said he left in the Lincoln. Testimony and rental records show that McCarty rented the Lincoln for one-half hour and put five miles on it. A set of keys to the Lincoln was found in McCarty's truck. The .38

8

caliber gun was identified by Wood as his own, although Wood did not have serial number records to show conclusively that it was his gun.  Wood's .38 was taken when his home was burglarized on the same date as the Phillips' home.  It had been recovered from the stolen Thunderbird which McCarty had rented, and which contained the envelope with McCarty's fingerprints.  Lucero testified that McCarty said he had found the guns when he burglarized a two-story dwelling and a single-story dwelling in a particular area of Rankin County.  There was sufficient evidence for the jury to reasonably find that McCarty had taken the three guns from the respective homes.  The first prong of the test is satisfied as to both burglaries.

As to the second prong, we find that the district court did not abuse its wide discretion in determining that the probative value outweighed the prejudicial effect of this testimony.  There was enough evidence, with the rental records for the two stolen cars, the wigs and beards, and other testimonial and documentary evidence, that we cannot say that the prejudicial effect of this evidence substantially outweighs its probative value on issues unrelated to McCarty's character.

McCarty also argues that the district court failed to make adequate Beechum findings because it did not address the necessary determination of whether or not there was sufficient proof of the extrinsic evidence regarding the .38 and the .22 firearms.  He further asserts that the district court incorrectly concluded that Lucero's testimony about threats to witnesses was

9

not extrinsic evidence and, therefore, failed to make any of the appropriate <u>Beechum</u> findings that there was sufficient proof of this extrinsic evidence.

The district court did make the requisite determination that the probative value of the challenged evidence outweighs the danger of unfair prejudice. The district court is not required to make a preliminary finding that the defendant committed the extrinsic evidence. <u>Bermea</u>. If the court determines, after introduction of the evidence, that the jury could not reasonably find by a preponderance of the evidence that the alleged extrinsic act occurred, however, the court must instruct the jury to disregard the evidence. <u>Id</u>., citing <u>Huddleston v. United States</u>, 485 U.S. 681, 690, 108 S.Ct. 1496, 1501-02, 99 L.Ed.2d 771 (1988).

The district court instructed the jury as follows regarding Lucero's testimony and the Rule 403(b) evidence (emphasis ours):

> The testimony of one who provides evidence against a defendant as an informer for a reduced sentence in his criminal case must always be examined and weighed by the jury with greater care and caution than the testimony of ordinary witnesses. You, the jury, must decide whether the witness' testimony has been affected by the benefits that the witness has received as a result of being granted leniency. You should keep in mind that such testimony is always to be received with caution and weighed with great care. *You should never convict any defendant upon the unsupported testimony of such a witness unless you believe that testimony beyond a reasonable doubt.*
>
> During the trial you have heard evidence of acts of the defendant which may be similar to those charged in the indictment, but which were committed on other occasions. You must not consider any of this evidence in deciding that the defendant committed the acts

10

charged in the indictment, however, you may consider this evidence for other very limited purposes.

If you find beyond a reasonable doubt from other evidence in this case that the defendant did commit the acts charged in the indictment, then you may consider evidence of the similar acts allegedly committed on other occasions to determine whether the defendant acted according to a plan or in preparation for commission of a crime. These are the limited purposes for which any evidence of other similar acts may be considered.

The challenged testimony of Lucero on direct examination is as follows:

Q. . . . If you would, please, tell the jury why you picked that point in your relationship with McCarty to tell the authorities about what he told you.

A. Well, the main reason was that threats were made from Mr. McCarty about certain witnesses and people that had identified him in conjunction with the crimes that he committed, and that the statement was made to me that if he gained his freedom that he would seek to harm those individuals for identifying him, possibly killing them.

Q. And so was that part of your motivation, then, at that point?

A. Yes. That was my major motivation.

Although there is no supporting evidence regarding McCarty's alleged threats to certain witnesses, we find the jury instruction sufficient. The jury was instructed not to use unsupported testimony to convict McCarty unless it believed that testimony beyond a reasonable doubt; and the jury was instructed to use evidence of similar acts only for limited purposes. Juries are presumed to follow the court's instructions. Zafiro v. U.S., -- U.S. --, 113 S.Ct. 933, 939, 122 L.Ed.2d 317 (1993). We find no reversible error.

11

McCarty asserts that the trial court erred in denying his motion to suppress the evidence seized as part of the search of the pickup truck and the Lincoln.  He contends that the warrants' underlying affidavit contains "improper hearsay information" and "knowingly false statements."  McCarty also challenges the issuance of the warrant, asserting that the affidavit contained insufficient evidence for the finding of probable cause.

In determining whether probable cause exists to order a search, a magistrate must make a practical, common-sense decision as to whether, given all the circumstances set forth in the affidavit, there is a fair probability that evidence of a crime will be found in a particular place.  U.S. v. Byrd, No. 93-4998, 1994 WL 475833 (5th Cir. Sept. 1, 1994).  Our review of the sufficiency of the affidavit is independent of the district court's and is not limited by the clearly erroneous standard of review.  U.S. v. McKeever, 5 F.3d 863, 865 (5th Cir. 1993) (citations omitted).  Like the district court, however, we owe deference to the magistrate's determination of probable cause, and we construe the affidavit in a common-sense manner.  Id.

We review a district court's denial of a motion to suppress due to the affidavit's failure to establish probable cause, using the following two part test: (1) whether the good faith exception to the exclusionary rule applies and (2) whether the warrant was supported by probable cause.  U.S. v. Mitchell, 31 F.3d 271 (5th Cir. Aug. 25, 1994), citing U.S. v. Laury, 985 F.2d 1293, 1311

12

(5th Cir. 1993).  Generally, if the good faith exception applies, we need not reach the probable cause issue.  Id.

Under the good faith exception, we uphold a search if the officers reasonably relied on a search warrant, as long as the warrant's underlying affidavit is not "so lacking in evidence of probable cause as to render official belief in its existence entirely unreasonable."  See Mitchell, Id.; see also, United States v. Fisher, 22 F.3d 574, 578 (5th Cir. 1994); U.S. v. Satterwhite, 980 F.2d 317, 320 (5th Cir. 1992).

The instant affidavit satisfies the good faith exception. Moreover, our review of the affidavit reveals that it presents probable cause for the issuance of the search warrant.  McCarty's argument about hearsay fails, as hearsay is expressly allowed in Rule 41(c)(1) of the Federal Rules of Criminal Procedure.  Rule 41(c)(1) states that

> If the federal magistrate judge or state judge is satisfied that grounds for the application exist or that there is probable cause to believe that they exist, that magistrate judge or state judge shall issue a warrant identifying the property or person to be seized and naming or describing the person or place to be searched. *The finding of probable cause may be based upon hearsay evidence in whole or in part. . . .*

The affidavit contains enough supporting and/or corroborating facts to render the hearsay contained therein sufficiently reliable for the purpose of the magistrate's determination.

McCarty's argument regarding false statements and material omissions also fails.  Negligent omissions will not undermine the affidavit. U.S. v. Martin, 615 F.2d at 329.  Absent evidence of an intentional material misrepresentation or omission in the

13

affidavit, the warrant will not be invalidated. <u>Franks v. Delaware</u>, 438 U.S. 154, 155-156, 98 S.Ct. 2674, 2676, 58 L.Ed.2d 667 (1978). The hearing on McCarty's motion to reconsider the district court's denial of his motion to suppress revealed no indication of intentional misrepresentation or omission. In fact, the record reveals no misrepresentation by the affiant, and no material omission. Accordingly, we find no error in the district court's ruling. <u>See and compare</u>, <u>U.S. v. Wake</u>, 948 F.2d 1422, 1428-29 (5th Cir. 1991), <u>cert denied</u>, -- U.S. --, 112 S.Ct. 2944, 119 L.Ed.2d 569 (1992).

Our independent review of the affidavit reveals no error in the district court's denial of McCarty's motion to suppress.

SUFFICIENCY OF THE EVIDENCE

McCarty argues that the district court erred in denying his "motion for directed verdict"[2] on count 1, bank robbery in violation of 18 U.S.C. § 2113(a). Specifically, McCarty argues that the evidence was insufficient to prove that he robbed the Sunburst Bank "by force, violence and intimidation."

In order to prove a violation of 18 U.S.C. § 2113(a), the Government must prove: (1) an individual or individuals (2) used force and violence or intimidation (3) to take or attempt to take (4) from the person or presence of another (5) money, property, or anything of value (6) belonging to or in the care, custody, control, management, or possession (7) of a bank, credit union,

---

[2] "Motions for directed verdict are abolished and motions for judgment of acquittal shall be used in their place." Fed. R. Crim. P. 29(a).

14

or savings and loan association. U.S. v. Van, 814 F.2d 1004, 1005-06 (5th Cir. 1987).

There is no assertion that McCarty used force or violence. We are faced only with the question of whether the evidence was sufficient to prove that he robbed the bank by intimidation. As used in § 2113(a), the term "intimidation" means "to make fearful or to put into fear." U.S. v. Higdon, 832 F.2d 312, 315 (5th Cir. 1987) (internal quotations omitted), cert. denied, 484 U.S. 1075, 108 S.Ct. 1051, 98 L.Ed.2d 1013 (1988).

The Government is not required to show either an "express verbal threat or a threatening display of a weapon." Id. Actual fear need not be proven, if the acts of the defendant would threaten an ordinary reasonable person. Id. Thus, the government need show only that an ordinary person in the teller's position would feel a threat of bodily harm from the perpetrator's acts. U.S. v. Baker, 17 F.3d 94, 97 (5th Cir. 1994), cert. denied, 1994 WL 286410 (Oct. 3, 1994).

> [I]ntimidation results when one individual acts in a manner that is reasonably calculated to put another in fear. Thus, from the perspective of the victim, a taking "by intimidation" under section 2113(a) occurs when an ordinary person in the teller's position reasonably could infer a threat of bodily harm from the defendant's acts. [Citations omitted.]

Higdon, 832 F.2d at 315. "Evidence that [the perpetrator's] acts did induce fear in an individual victim is probative of whether his acts were objectively intimidating." Id.

Using the "rational jury" standard, this Court recently upheld a conviction for aiding and abetting bank robbery in

15

violation of § 2113(a).  <u>Baker</u>, 17 F.3d at 96.  <u>Baker</u> involved two consecutive robbery attempts in which an 11-year old boy presented tellers a note which contained an express threat of bodily injury.  <u>Id.</u> at 95.  Both tellers testified that although they were at first incredulous, they became fearful and felt threatened.  <u>Id.</u> at 97.

In <u>Higdon</u>, the victim-tellers both testified that they complied with the robber's demands out of fear.  832 F.2d at 313. The robber did not display a gun or verbally threaten them with physical harm.  <u>Id.</u>  He did "order[] the two women to lie on the floor and told them not to `dare' to get up."  <u>Id.</u>  Using the "manifest miscarriage of justice" standard, this Court affirmed the conviction for bank robbery in violation § 2113(a).  <u>Id.</u> at 316.[3]

On December 23, 1992, a man entered the Sunburst Bank wearing a fake beard, wig, dark clothing, gloves, and a cap and carrying a black purse.  Teller Robin Dunaway testified that as soon as she saw this outfit that was "so abnormal," she knew she "was fixing to be robbed."  There were no other customers in the bank at the time, and the only bank employees were two other tellers and a secretary.  The robber approached Dunaway's window,

---

[3]  This Court noted in <u>Higdon</u>, 832 F.2d at 316, that other courts had found sufficient evidence of intimidation "under similar or less compelling circumstances."  832 F.2d at 316 (citing <u>U.S. v. Hopkins</u>, 703 F.2d 1102 (9th Cir. 1983)(no threats and unarmed);  <u>U.S. v. Slater</u>, 692 F.2d 107 (10th Cir. 1982)(no threats and unarmed); <u>U.S. v. Robinson</u>, 527 F.2d 1170 (6th Cir. 1975)(no express threat or display of weapons); <u>U.S. v. Epps</u>, 438 F.2d 1192 (4th Cir. 1971); <u>U.S. v. Brown</u>, 412 F.2d 381 (8th Cir. 1969)).

16

unfolded a note, and handed it to her. Dunaway testified that the typewritten note said, "Be calm. This is a robbery." Dunaway indicated that the note said more but she only "skimmed the note because there was no doubt what it said." The robber did not speak to her. He indicated to her through hand gestures which denominations of bills to place on the counter and waved her past the bait bills and dye pack. The robber did not display a gun. The robber placed the money in the bag and "ran out the front door."

Bank photographs of the robbery were introduced into evidence. Dunaway testified that the robbery occurred over what "seemed like a real long time. I would think it seemed real long, probably almost a complete minute." She stated that she "was, of course, nervous at the time." Dunaway described the robber as "pretty tall. I'm five-six, so I said I would say six feet to six-three." Dunaway also testified "I'll never forget the wig and the face . . ." Id. at 62. She testified she did not remember anything regarding other bank employees, that she never took her eyes "off in front" of her counter, and that her mind was not on what other employees were doing. Id. at 68-69.

Angela Cooper, the secretary at Sunburst testified that she witnessed the robbery. She first noticed the bank was being robbed when the robber "first walked in." She did not see a gun during the course of the robbery.

McCarty argues that there was absolutely no proof whatsoever at trial of intimidation. He argues that the only communication

17

between the robber and the teller was via the typewritten note. He highlights that the teller did not "testify directly or by suggestion that she was afraid."

The Government argues that "[t]he size differential between [the robber] and the victim teller could certainly cause her to feel threatened." It argues that the teller "indicated fear by not taking the time to read the demand note." The Government argues that "[o]ne will never know exactly what the note said because the defendant took it with him. The jury could have reasonably inferred that it contained a sufficient threat since the teller complied promptly and even obeyed defendant's non-verbal instructions to omit the security dye pack from the loot."

McCarty moved for a judgment of acquittal at the close of the Government's case. The district court denied the motion. The record does not reflect that the motion was renewed at the conclusion of the evidence. Neither the pleadings in the record nor the docket sheet reflect that any post trial motion for acquittal was filed by the defendant.

This Court has held that if a defendant fails to renew his motion for acquittal at the close of all evidence, we are limited to a review for plain error. Under the plain error standard, we reverse only where there was a manifest miscarriage of justice. "Such a miscarriage would exist only if the record is devoid of evidence pointing to guilt, or . . . because the evidence on a key element of the offense was so tenuous that a conviction would be shocking." U.S. v. Pierre, 958 F.2d 1304, 1310 (5th Cir.) (en

18

banc), <u>cert. denied</u>, --- U.S. ---, 113 S. Ct. 280, 121 L.Ed.2d 207 (1992) (internal quotations and citations omitted).  Although there has been some question as to the distinction between the plain error "miscarriage of justice" standard and the "sufficiency of the evidence" standard,[4] we are bound by the precedent of this circuit, as reflected in <u>Pierre</u> and in <u>U.S. v. Thomas</u>, 12 F.3d 1350, 1358 (5th Cir. 1994), <u>cert. denied</u>, ___ U.S. ___, 114 S.Ct. 1861, 128 L.Ed.2d 483 (1994) (finding the plain error standard proper where the defendant fails to move for judgment of acquittal at the close of evidence).

A jury could glean from Dunaway's testimony that she was afraid.  She stated she was nervous and that the bank robber's appearance was unforgettable.  Dunaway's initial reaction, when she saw the strangely dressed man enter the bank, was that she "knew" a robbery was about to occur.  This man immediately walked to her counter.  Her intuitive suspicion was quickly confirmed by the robber when he unfolded a note and presented it to her. A jury could easily infer that the robber's appearance and actions exacerbated her nervousness.  Applying common sense, the jury could reasonably conclude that the coercive actions of the robber did intimidate Dunaway.  The jury was also presented three photographs (Government Exhibits 3, 4, and 5) of the Sunburst robbery in progress.  Jurors viewing these photographs could readily see the foreboding presence of the long-haired, long-

---

[4]  <u>See U.S. v. Pennington</u>, 20 F.3d 593, 597 n.2 (5th Cir. 1994); <u>see also</u>, <u>U. S. v. Davis</u>, 583 F.2d 190, 198-199 (5th Cir. 1978) (Clark, J. concurring in part and dissenting in part).

bearded robber who confronted Dunaway.  The instant record is therefore far from "devoid" of evidence of intimidation in the Sunburst Bank robbery:  even a rational jury could have found, beyond a reasonable doubt, that an ordinary person in Dunaway's position would feel a threat of bodily harm from McCarty's acts. Accordingly, we find no error in the district court's denial of McCarty's motion for judgment of acquittal at the close of the government's case, and we affirm as to McCarty's sufficiency of the evidence claim.

CUMULATIVE ERROR

McCarty asserts as cumulative error (1) the admission of the allegedly prohibited Rule 404(b) testimony, and (2) repeated rulings by the district court which "overruled legitimate objections of defense counsel".  The Federal Rule of Evidence Rule 404(b) argument is without merit, as discussed above.  We shall therefore examine the remaining two assertions.

McCarty contends that the district court repeatedly overruled his counsel's legitimate objections such that it undermined the trial process to such a degree that the conviction should be overturned.  He argues only two objections.  First is his objection to the admission of a photograph of the typewriter ribbon used during the testimony of one of the government's expert witnesses.

FBI Special Agent Lou Senter, a forensic document examiner, testified as an expert witness about his examination of the typewriter ribbon which had been recovered, with the typewriter,

20

from the trunk of the stolen Lincoln.  The typewriter ribbon and cartridge were admitted into evidence as Government Exhibits 39 and 40.  He testified he found on the ribbon--verbatim, including retypes, strikeovers, and corrections--the entire text of the demand note used by the robber in the Magnolia Federal Bank robbery.  Senter testified that the photographs accurately depict the ribbon which contains the words of the demand note.  It was his opinion that the ribbon was the same ribbon used to type the Magnolia bank robbery note.

According to McCarty, the government's failure to obtain the photographs prior to trial rendered defense counsel unable to obtain his own document expert in an attempt to rebut the government's expert.  However, McCarty has not challenged the admission of Senter's testimony or report regarding the ribbon, or the admission of the typewriter ribbon which is depicted on the photographs.  McCarty has made no showing that the presence or absence of the photographs affected his ability to have his own expert to examine Senter's report regarding the typewriter ribbon, or to otherwise obtain or examine discoverable information about the ribbon.  We find no merit to this argument.

The second ruling McCarty challenges as cumulative error is that the district court improperly overruled defense counsel's objection to witness Jan Mickelberg's photo identification of McCarty.  At trial, defense counsel argued that the photographic spread was not admissible because:

> Ms. Mickelberg stated that the photograph of Paul
> Martin McCarty resembled the facial structure and the

21

age of the individual whom she had seen in the neighborhood -- in her neighborhood on the evening of February 11th of 1993.  Ms. Mickelberg didn't recall that the individual's hair in the photograph was different in view of the fact that the person she saw the hair was combed more in a downward fashion as opposed to that in the photograph.

The district court allowed admission of the photographs used in Mickelberg's identification.  During her testimony, Mickelberg did note distinctions between the man she observed on February 11, 1993 and the man who sat before her as the defendant at trial.  The jury heard testimony that, when shown the photographs, Mickelberg selected one picture in the photographic spread (McCarty's) and indicated that it looked like the man she saw, but that there were some differences.  McCarty cites no authority for his assertion that Mickelberg's testimony renders the photographic spread inadmissible.  We find no error in this district court ruling.

Having found no error, we accordingly find no merit to McCarty's contention that these rulings constitute cumulative error.

ADMISSION OF THE AFFIDAVIT

McCarty asserts that the district court erred in allowing admission of the affidavit into evidence.  The record reflects that the affidavit was admitted for the limited purpose of allowing the Government to refer to it or to read selected portions during witness testimony.  However, because there is a statement in the affidavit that McCarty was on parole from Louisiana for simple burglary, the district court stated that the

22

affidavit was not to be presented to the jury.  McCarty contends that "the record of the bench conference does not reflect that the court's clerk was present at the conference.  There is, therefore, no reason to assume that it was not given to the jury."  He requests a reversal of his conviction due to this alleged error, or "at least a hearing to determine whether the jury saw the affidavit."

McCarty has cited, and we have found, no statutory or jurisprudential authority for his contention that these circumstances either constitute reversible error or require a remand for further inquiry.  The record gives no indication that the district court's instruction regarding the affidavit was violated.  McCarty also reasserts the allegations of false statements and material omissions in the affidavit as discussed above regarding probable cause to issue the search warrant.  The record does not support his allegations of false statements or material omissions.  McCarty's request is denied.

SENTENCING GUIDELINES

McCarty contends that he was improperly given a U.S.S.G. 2B3.1(b)(2)(C) five level enhancement for possession of a weapon during the Sunburst Bank robbery.

A district court's application of the sentencing guidelines is reviewed for legal correctness de novo.  However, its factual findings are reviewed for clear error. U.S. v. Wimbish, 980 F.2d 312, 313 (5th Cir. 1992), cert. denied, --- U.S. --, 113 S.Ct. 2365, 124 L.Ed.2d 272 (1993); U. S. v. Smallwood, 920 F.2d 1231

23

(5th Cir. 1991), <u>cert. denied</u>, -- U.S. --, 111 S.Ct. 2870, 115 L.Ed.2d 1035 (1991).

McCarty's argument amounts to an assertion that there was insufficient evidence upon which to base this enhancement because "[t]he only verification for this was contained in the inherently suspect testimony of Alan Lucero to the effect that Mr. McCarty told him that he left a .38 in the Thunderbird that he had the gun as a backup." McCarty correctly points out that the finding of the gun in the Thunderbird does not, in and of itself, establish that McCarty possessed a gun at the time of the offense. However, viewing the evidence as a whole, this factual finding by the district court is not clearly erroneous. Accordingly, we do not disturb the district court's application of U.S.S.G. 2B3.1(b)(2)(C).

McCarty next contends that he was improperly given a U.S.S.G. 2B3.1(b)(2)(A) seven level enhancement for the discharge of a weapon in connection with the Magnolia Federal Bank robbery. As with his previous argument, this argument amounts to an assertion that there was insufficient evidence upon which to base this enhancement. Bruce Dent, the Magnolia Federal Bank customer who chased McCarty outside the bank, testified that when he saw McCarty stop and begin to search the black bag, he hid between nearby cars. Dent stated that McCarty pulled out a gun and fired shots, but on cross examination stated that he assumed that McCarty had retrieved a gun from the bag and fired the shots he heard. McCarty asserts that this testimony, alone, was

24

insufficient to support this enhancement.  He notes that no spent casings were found and no verification that shots were fired.  We disagree.

The evidence contained more than Dent's testimony.  There was also the following evidence: the bank robber had brandished a firearm in the bank; the .45 that was recovered from the stolen Lincoln, along with the typewriter, wig, and other attire worn by the bank robber; McCarty's statement to Lucero that he had used the .45 during the Magnolia bank robbery; and the money found where the bank robber had stopped and emptied out some of the bag's contents.  On this record, we find no clear error in the district court's application of this sentencing guideline.

McCarty also contends that the district court used the wrong amount in calculating the loss to the Magnolia Federal Bank.  He asserts that the district court failed to take into account the $8,000 that was immediately recovered.  Thus, according to McCarty, he should not have received the one point enhancement under U.S.S.G. § 2B3.1(b)(6)(B).  This argument is meritless.  The § 2B3.1(b)(6)(B) valuation of loss is described in the application notes to § 2B1.1.  See Application Notes, § 2B3.1.  "Loss" means the value of the property taken, damaged, or destroyed.  Application Notes, § 2B1.1.  There is no requirement that this amount be offset by the amount recovered, for the purposes of determining the offense level.  The district court did not err in considering the full $13,816 taken in the Magnolia Federal Bank robbery in applying the loss provision of § 2B3.1.

25

Finally, McCarty asserts that his convictions for violation of 18 U.S.C. §§ 2113(a) and (d), and 18 U.S.C. § 924(c)(1), when combined with the U.S.S.G. 2B3.1(b)(2)(A) seven level enhancement, constitutes double jeopardy. As support for this assertion, McCarty cites Simpson v. United States, 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978), Busic v. United States, 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980), and McLain v. United States, 643 F.2d 911 (2nd Cir. 1981) (which relies on Simpson and Busic). However, this court has stated that the 1984 amendment to 18 U.S.C. § 924(c) statutorily overruled Simpson and Busic. See U.S. v. Holloway, 905 F.2d 893, 894 (5th Cir. 1990). Where Congress authorizes cumulative punishments for even the same offense, the Double Jeopardy Clause of the Fifth Amendment is not offended. Holloway, Id., citing Missouri v. Hunter, 459 U.S. 359, 367, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). Congress authorized the penalties to which McCarty was sentenced. These penalties were likewise taken into consideration in the drafting of U.S.S.G. 2B3.1(b)(2)(A) We find no merit to McCarty's assertion of double jeopardy.

## CONCLUSION

For the foregoing reasons, McCarty's convictions and sentences are AFFIRMED.

26