# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 11, 2024

Lyle W. Cayce
Clerk

No. 23-40476

_____

United States of America,

*Plaintiff—Appellee*,

*versus*

Jessica Dinora Peña-Rodriguez,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:23-CR-426-1

_____

Before Clement, Graves, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

Jessica Dinora Peña-Rodriguez (Peña-Rodriguez) challenges the district court's application of three sentencing enhancements based on her role in a human-smuggling operation. We AFFIRM the sentence.

I

Peña-Rodriguez was charged in nine of ten counts in a superseding indictment alleging conspiracy to transport aliens, transporting aliens,

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

conspiracy to harbor aliens, and harboring aliens, within the United States, from on or about August 1, 2021, through February 27, 2023. She pleaded guilty to count eight, which charged her with harboring an alien within the United States for the purpose of commercial advantage and private financial gain under 8 U.S.C. § 1324(a)(1)(A)(iii) and (a)(1)(B)(i).

On July 5, 2023, the United States Probation Office (the USPO) prepared a Presentence Investigation Report (PSR), applying the 2021 United States Sentencing Guidelines Manual. To prepare the report, the USPO obtained information about the charged offense from Border Patrol investigative reports and interviewed a Border Patrol intelligence agent, who provided information based on law enforcement interviews and debriefings of indicted and unindicted co-conspirators as well as material witnesses. The PSR identified several related cases stemming from the same human-smuggling investigation that resulted in Peña-Rodriguez's prosecution. Based on the available information, the PSR concluded that Peña-Rodriguez and her boyfriend, a co-defendant, coordinated the transporting and harboring of undocumented aliens from August 1, 2021, through April 3, 2023.

The PSR reflected a base offense level of 12 under U.S.S.G. § 2L.1(a)(3), the applicable Guideline for Peña-Rodriguez's offense. It applied a four-level enhancement for Peña-Rodriguez's role as an organizer or leader under U.S.S.G. § 3B1.1(a), because it found Peña-Rodriguez was a coordinator of an extensive smuggling operation involving five or more participants for an extended period of time. In addition to directing indicted and unindicted co-conspirators to transport undocumented aliens for payment, the PSR found that Peña-Rodriguez and her boyfriend (1) transported and harbored aliens at the home they shared; (2) used several individuals as a brush guide or transporters; (3) hired another individual—Adan Lopez (Lopez)—to help coordinate and transport aliens, who in turn

recruited others; and (4) sent and received multiple wire transfers of significant sums of money to and from multiple individuals.

The PSR also applied a nine-level enhancement under U.S.S.G. § 2L1.1(b)(2)(C), because the offense involved 100 or more aliens. The PSR listed multiple smuggling events occurring between November 2, 2021, and April 3, 2023, which it found were attributable to the conspiracy in which Peña-Rodriguez, her boyfriend, and indicted and unindicted co-conspirators participated. Based on the number of persons encountered during those events, the PSR held Peña-Rodriguez accountable for smuggling 120 undocumented aliens.

Finally, the PSR applied a four-level enhancement under U.S.S.G. § 2L1.1(b)(4), because the offense involved an unaccompanied minor. On November 2, 2021, law enforcement conducting surveillance saw numerous persons entering a Dodge truck and a Chevrolet truck. Law enforcement attempted to conduct an inspection of the occupants in both vehicles. The driver of the Chevrolet truck, who was later identified as Lopez, drove to a nearby parking lot and fled on foot. Law enforcement found ten undocumented persons, including an unaccompanied minor, in the Chevrolet truck. Lopez, who was also undocumented, was arrested nearby and granted voluntary departure. The Dodge truck also failed to yield to law enforcement and got away; the PSR reflected that there was no information about its occupants.

Later that month, on November 24, 2021, law enforcement saw that same Dodge truck in the same area where it had been seen during the smuggling incident on November 2, 2021. After initiating a traffic stop, law enforcement observed that the Dodge truck had missing seats and mud on the interior, as well as mud on the bed. The driver of the Dodge truck initially

lied to law enforcement about his identity, but he eventually identified himself—he was Peña Rodriguez's boyfriend.

On September 1, 2022, Lopez was arrested again and admitted to law enforcement that he had been driving the Chevrolet truck on November 2, 2021.[1] Telephone records confirmed Lopez's claim that he and Peña-Rodriguez—to whom he referred as the smuggling coordinator residing in the United States—had coordinated various smuggling events together, including those of December 22, 2021, and January 17, 2022. He claimed that cartel members had threatened him after his voluntary departure because they assumed he had divulged information about the smuggling operation, but they agreed to release him in exchange for his continued participation in smuggling. In February 2022, Lopez returned to the United States, where he was contacted by an individual and given instructions. Lopez told law enforcement that the individual was working with Peña-Rodriguez; after each successful smuggling event the driver coordinated, Peña-Rodriguez met with and paid him on behalf of the individual. Testimony of another co-conspirator further backed up Lopez's claim, as he also was threatened for his continued participation in the smuggling operation by a cartel member, and he then worked with both Peña-Rodriguez and her boyfriend as they coordinated smuggling operations in the United States. Based on all the information acquired, the PSR held Peña-Rodriguez accountable for the transporting of the unaccompanied minor on November 2, 2021.

---

[1] Lopez also stated that he had successfully transported undocumented aliens two or three times before that, but the PSR noted that there was insufficient evidence to substantiate this claim.

No. 23-40476

After applying a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a), the PSR calculated a total offense level of 29.[2] Based on a criminal-history category of I, the resulting Guidelines range was 87 to 108 months. The PSR noted that if the government moved for an additional one-level decrease for acceptance of responsibility, the total offense level would be 28 and the resulting Guidelines range would be 78 to 97 months.

Peña-Rodriguez filed written objections to the PSR on July 13, 2023. First, she objected to the nine-level enhancement for an offense involving 100 or more unlawful aliens, alleging a lack of evidence to support the adjustment. Second, she objected to the application of a four-level enhancement for an offense involving an unaccompanied minor, again citing a lack of evidence to support the adjustment. Third, she objected to the four-level enhancement for being an organizer or leader of a criminal activity because she was just "an average participant." The USPO submitted an addendum to the PSR on July 27, 2023, addressing Peña-Rodriguez's objections and maintaining that the enhancements were warranted.

At sentencing, Peña-Rodriguez re-urged her objections, emphasizing that Lopez's statement that she had been involved in the November 2, 2021, smuggling incident lacked credibility. In response, the government argued that "behind the scenes," Peña-Rodriguez was the "brains behind the operation," which explained "why she [had not] come out in the encounters as much." It also argued that Peña-Rodriguez and her boyfriend almost co-equally handled the finances throughout the conspiracy, and that there were transfers coming into a joint account from Zelle and Cash App accounts in

––––––––––––––––––––––

[2] The district court also applied a two-level enhancement under U.S.S.G. § 2L1.1(b)(6), but Peña-Rodriguez does not challenge its application.

both names. The government also argued that Lopez identified Peña-Rodriguez during his first interview after his arrest, he confirmed the identification in subsequent interviews, his identification was consistent with information from two other individuals who also identified her as a coordinator, and that WhatsApp messages, statements, and phone communications showed her involvement in the conspiracy going back to 2021. The district court noted that when reading the PSR, the evidence of Peña-Rodriguez's "involvement and guilt" "seemed fairly voluminous and obvious." After argument, the district court adopted the PSR's factual findings, overruled Peña-Rodriguez's objections, and applied the enhancements recommended by the PSR. After applying the third acceptance point, which resulted in a total offense level of 28 and a Guidelines range of 78 to 97 months, the district court sentenced Peña-Rodriguez to 78 months' imprisonment.

On appeal, Peña-Rodriguez challenges the imposition of the enhancements for being an organizer or leader, an offense involving 100 or more aliens, and an offense involving an unaccompanied minor.

## II

### A

"We review the district court's interpretation or application of the Sentencing Guidelines *de novo* and its factual findings for clear error." *United States v. Trujillo*, 502 F.3d 353, 356 (5th Cir. 2007). "A factual finding is not clearly erroneous if it is plausible in light of the record as a whole." *Id.* "[I]n determining whether an enhancement applies, a district court is permitted to draw reasonable inferences from the facts, and these inferences are fact-findings reviewed for clear error as well." *United States v. Caldwell*, 448 F.3d 287, 290 (5th Cir. 2006). We "will find clear error only if a review of the record results in a 'definite and firm conviction that a mistake has been

committed.'" *United States v. Zuniga*, 720 F.3d 587, 590 (5th Cir. 2013) (quoting *United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011)).

B

"The government must prove factors for enhancement of sentencing by a preponderance of the evidence." *United States v. Hill*, 258 F.3d 355, 357 (5th Cir. 2001) (citing *United States v. Canada*, 110 F.3d 260, 263 (5th Cir. 1997)). "When making factual findings for sentencing purposes, district courts 'may consider any information which bears sufficient indicia of reliability to support its probable accuracy.'" *United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012) (quoting *United States v. Solis*, 299 F.3d 420, 455 (5th Cir. 2002)). "A presentencing report generally bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations required by the sentencing guidelines." *United States v. Fitzgerald*, 89 F.3d 218, 223 (5th Cir. 1996).

"[A] district court may properly find sufficient reliability on a presentence investigation report which is based on the results of a police investigation." *United States v. Vela*, 927 F.2d 197, 201 (5th Cir. 1991). "The district court 'may adopt the facts contained in a [presentence report] without further inquiry if those facts have an adequate evidentiary basis with sufficient indicia of reliability and the defendant does not present rebuttal evidence or otherwise demonstrate that the information in the PSR is unreliable.'" *Trujillo*, 502 F.3d at 357 (quoting *United States v. Cabrera*, 288 F.3d 163, 173–74 (5th Cir. 2002) (per curiam)).

"[M]ere inclusion in the PSR does not convert facts lacking an adequate evidentiary basis with sufficient indicia of reliability into facts a district court may rely upon at sentencing," however. *Harris*, 702 F.3d at 230 n.2; *see also United States v. Elwood*, 999 F.2d 814, 817–18 (5th Cir. 1993) ("Bald, conclusionary statements do not acquire the patina of reliability by

mere inclusion in the PSR."). "If information is presented to the sentencing judge with which the defendant would take issue, the defendant bears the burden of demonstrating that the information cannot be relied upon because it is materially untrue, inaccurate or unreliable." *Fitzgerald*, 89 F.3d at 223. "Mere objections do not suffice as competent rebuttal evidence." *United States v. Parker*, 133 F.3d 322, 329 (5th Cir. 1998).

## III

## A

Peña-Rodriguez first argues that the district court clearly erred in finding she was an organizer or leader in the smuggling operation because the facts were not sufficient to show that she was more than a co-conspirator.

Section 3B1.1(a) of the Sentencing Guidelines provides that an offense level should be increased by four levels "if the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). In determining whether a defendant is an organizer or leader, courts consider:

> [T]he exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1 cmt. n.4. It is possible to have multiple leaders. *Id.*; *see, e.g.*, *United States v. Cooper*, 274 F.3d 230, 247 (5th Cir. 2001). "To qualify for an adjustment under this section, the defendant must have been the . . . supervisor of one or more other participants." U.S.S.G. § 3B1.1 cmt. n.2. "[A] district court may find that a defendant exercised a leader/organizer role by inference from the available facts." *Cabrera*, 288 F.3d at 174.

Here, the PSR relied on evidence from Border Patrol investigative reports and an agent to find that Peña-Rodriguez and her boyfriend coordinated an extensive smuggling operation spanning two years. Peña-Rodriguez and her boyfriend directed indicted and unindicted co-conspirators to transport undocumented aliens for payment, transported aliens to their own home, harbored them there, used a brush guide and other individuals to transport aliens, hired an individual to help in the smuggling operation, and received and sent multiple payments of significant sums of money. In addition, a co-conspirator told agents that Peña-Rodriguez and her boyfriend hired the co-conspirator, Peña-Rodriguez paid the co-conspirator after each successful smuggling event, she coordinated smuggling events, and the co-conspirator in turn recruited others to transport undocumented aliens for the operation.

Based on the evidence recited in the PSR, the district court could plausibly conclude that Peña-Rodriguez was an organizer or leader of the alien smuggling operation. *See Trujillo*, 502 F.3d at 356. Peña-Rodriguez has failed to carry her burden of showing that the district court clearly erred by imposing a four-level enhancement under U.S.S.G. § 3B1.1(a).

B

Peña-Rodriguez next argues that the district court clearly erred in finding that the smuggling operation involved more than 100 aliens. Specifically, she argues that the evidence is insufficient to hold her accountable for the fifteen aliens apprehended on December 16, 2021, because the PSR contained no evidence linking her to the driver of the vehicle or any part of the smuggling operation. She also argues that she should not be held accountable for the eight aliens apprehended on May 23, 2022, because the driver initially stated he was threatened by a cartel member

to participate in the alien smuggling operation and did not mention Peña-Rodriguez's involvement until later.

Section 2L1.1(b)(2)(C) of the Sentencing Guidelines provides that an offense level should be increased by nine levels if the offense involved the smuggling, transportation, or harboring of 100 or more unlawful aliens.

According to the PSR, the individual driving the vehicle involved in the event on December 16, 2021, was not apprehended, and there is no evidence that Peña-Rodriguez or any of her co-conspirators were implicated by any of the fifteen undocumented aliens found in that vehicle.[3] The district court could not rely on these facts in sentencing because they lacked "adequate evidentiary basis with sufficient indicia of reliability." *Harris*, 702 F.3d at 230 n.2.

As for the event on May 23, 2022, while the driver initially stated that he was forced by a cartel member to participate, he also told authorities that he had been in contact with one of the event coordinators—a woman who went by the same nickname as Peña-Rodriguez. He later identified Peña-Rodriguez from a photographic lineup as the coordinator. Peña-Rodriguez did not provide any evidence showing that the driver's statements were untrue or unreliable. *See Fitzgerald*, 89 F.3d at 223.

Even excluding the fifteen aliens apprehended on December 16, 2021, the PSR nonetheless supports the district court's conclusion that the offense involved more than 100 aliens, as required by U.S.S.G § 2L1.1(b)(2)(C). *See Trujillo*, 502 F.3d at 356. Peña-Rodriguez has failed to show that the district

---

[3] On appeal, the government assumes the event on December 16, 2021, should not be attributed to Peña-Rodriguez.

court clearly erred by applying a nine-level enhancement under U.S.S.G. § 2L1.1(b)(2)(C).

## C

Finally, Peña-Rodriguez argues that the district court clearly erred in imposing an enhancement for harboring an unaccompanied minor because the supporting evidence was insufficiently reliable. Peña-Rodriguez specifically alleges that the PSR only relied on investigative reports and "the dubious testimony" of Lopez for its finding that an unaccompanied minor was a passenger in the Chevrolet truck stopped on November 2, 2021, so she was not required to offer rebuttal evidence.

Section 2L1.1(b)(4) of the Sentencing Guidelines provides that an offense level should be increased by four levels "[i]f the offense involved the smuggling, transporting, or harboring of a minor who was unaccompanied by the minor's parent, adult relative, or legal guardian." The term "minor" is defined as an individual younger than eighteen years of age. U.S.S.G. § 2L1.1 cmt. n.1. As noted, in deciding whether this enhancement applied to Peña-Rodriguez for purposes of sentencing, the district court was permitted to "'consider any information which bears sufficient indicia of reliability to support its probable accuracy.'" *Harris*, 702 F.3d at 230 (quoting *United States v. Solis*, 299 F.3d 420, 455 (5th Cir. 2002) (internal quotation marks and citation omitted)). A PSR generally meets this standard, and a district court "'may adopt the facts contained in a [PSR] without further inquiry if those facts have an adequate evidentiary basis with sufficient indicia of reliability and the defendant does not present rebuttal evidence or otherwise demonstrate that the information in the PSR is unreliable.'" *Id.* (quoting *Trujillo,* 502 F.3d at 357).

Here, the PSR states that it was law enforcement officers who saw individuals entering both a Dodge truck and a Chevrolet truck on November

2, 2021. Although the Dodge truck got away, the officers apprehended the Chevrolet truck and discovered the unaccompanied minor inside the truck. It was not until his arrest ten months later that Lopez admitted that he had been driving the Chevrolet truck on November 2, 2021; the PSR reflects no reliance on his statements for the finding that one of the Chevrolet truck's passengers was an unaccompanied minor. Officers made that determination. The investigative reports reflecting the officers' own observations and the results of their investigation were a sufficiently reliable basis for the finding in the PSR, upon which the district court relied, that Peña-Rodriguez's offense involved an unaccompanied minor.

To the extent that Peña-Rodriguez's argument may be interpreted as implicating her claim that the district court clearly erred in finding that the drug smuggling operation involved more than 100 aliens, as noted, the PSR relied on intelligence, interviews, and debriefings for its conclusion that Peña-Rodriguez and her boyfriend were coordinators in a smuggling conspiracy between August 1, 2021, three months before the unaccompanied minor was recovered on November 2, 2021, through April 3, 2023. The PSR noted that cellular telephone records and financial records for various accounts used by both Peña-Rodriguez and her boyfriend showed activity consistent with the coordination of alien smuggling operations throughout that time frame. Notably, records for a Zelle account reflected payments sent and received as far back as February 2020.

The PSR found that Lopez transported the unaccompanied minor during the unsuccessful smuggling event of November 2, 2021, on behalf of Peña-Rodriguez and her boyfriend. The PSR noted Lopez's statements that cartel members subsequently forced him to continue his participation in the smuggling operation. It specifically noted that telephone records confirmed his claim that he coordinated smuggling events directly with Peña-Rodriguez the following month, on December 22, 2021, and on January 17, 2022. It also

noted Lopez's statement that he returned to the United States in February 2022, where he was contacted and given instructions by an individual working with Peña-Rodriguez; on behalf of that individual, Peña-Rodriguez paid the driver for each successful smuggling event. It also noted that the information Lopez provided was corroborated, or consistent with information provided, by other co-conspirators.

The PSR reflects additional corroboration of Peña-Rodriguez's involvement with the smuggling event on November 2, 2021. About three weeks later, on November 24, 2021, law enforcement located and stopped the same Dodge truck that they had seen with the Chevrolet truck in the same area where both had been seen on November 2, 2021. Driving the Dodge truck, which had missing seats and mud inside, was Peña-Rodriguez's boyfriend. Unlike the smuggling event of December 16, 2021, involving fifteen aliens, the PSR tied the event on November 2, 2021, to the conspiracy.

Based on the PSR and the other information before it, the district court could plausibly conclude that Peña-Rodriguez's offense involved the unaccompanied minor found during the smuggling event on November 2, 2021. *See Trujillo*, 502 F.3d at 356. Although the PSR does not explicitly state that Peña-Rodriguez was involved in the November 2, 2021, smuggling incident, "a defendant's participation in the conspiracy [] may be inferred from the development and collocation of circumstances." *United States v. Valdez*, 452 F.3d 252, 257 (5th Cir. 2006) (quoting *United States v. Lentz*, 823 F.2d 867, 868 (5th Cir. 1987)). The district court was free to conclude that the facts recited in the PSR were sufficiently reliable because they were obtained through law enforcement investigations and to draw inferences from them. *United States v. Fuentes*, 775 F.3d 213, 220 (5th Cir. 2014). Moreover, its conclusion that Peña-Rodriguez should be held accountable for transporting the unaccompanied minor was based on more than a reasonable

inference—Peña-Rodriguez's counsel specifically acknowledged at sentencing that Lopez had told law enforcement about Peña-Rodriguez's involvement in the November 2, 2021, smuggling incident.[4] The record as a whole supports the district court's conclusion. *See Trujillo*, 502 F.3d at 356.

Peña-Rodriguez retained the burden of demonstrating these facts to be "untrue, inaccurate or unreliable." *Fitzgerald*, 89 F.3d at 223. The record does not indicate Peña-Rodriguez presented any evidence to meet her burden. *Id*. Her objection did not amount to "competent rebuttal evidence." *Parker*, 133 F.3d at 329.

Peña-Rodriguez has failed to show that the court clearly erred by applying a four-level enhancement under U.S.S.G. § 2L.1.1(b)(4) for transporting an unaccompanied minor.

## IV

For these reasons, we AFFIRM Peña-Rodriguez's sentence.

---

[4] According to an earlier government filing, Lopez provided the statement to law enforcement "that he was working on behalf of" Peña-Rodriguez and her boyfriend on November 2, 2021.

No. 23-40476

Jᴀᴍᴇs E. Gʀᴀᴠᴇs, Jʀ., *Circuit Judge*, dissenting in part:

I disagree with the majority's determinations that the evidence supports the four-level enhancement for transporting an unaccompanied minor under U.S.S.G. § 2L1.1(b)(4) and the nine-level enhancement for an offense involving 100 or more aliens under U.S.S.G. § 2L1.1(b)(2)(C). Because I would vacate and remand for resentencing, I respectfully dissent in part.

As stated by the majority, Peña-Rodriguez pleaded guilty to count eight of the superseding indictment. Count eight charged Peña-Rodriguez and Derly Medina with harboring a single alien, Jose Luis Hurtado-Ortega, from on or about December 15, 2022, to on or about December 17, 2022. Also, pursuant to the plea agreement, the government agreed to dismiss all remaining counts.[1]

The unaccompanied minor enhancement pertains to an incident on November 2, 2021. Regarding that incident, the PSR said that a BP agent conducting surveillance in Hidalgo, Texas, observed some individuals entering a Chevrolet truck and a Dodge truck, and other agents responded "to conduct an inspection of the occupants of said vehicles." The PSR said, "[t]he driver of the Chevrolet truck, later identified as Adan Lopez, failed to stop and drove into a business parking lot, where he stopped and fled on foot. Adan Lopez was arrested nearby. . . . There is no information available as to the Dodge truck and its occupants." In a subsequent paragraph, the PSR

---

[1] The government routinely negotiates plea deals wherein it agrees to dismiss other remaining counts. In reality, those other counts are typically never truly dismissed in the legal sense of the word because the government then simply later seeks sentencing enhancements to punish defendants for those same dismissed counts. *Dismiss*, Bʟᴀᴄᴋ's Lᴀᴡ Dɪᴄᴛɪᴏɴᴀʀʏ (12th ed. 2024) (to terminate a claim without further hearing). The problems arise when the government fails to provide evidence to support those enhancements, and when courts disregard the lack of evidence.

said: "On November 24, 2021, a BP agent located a Dodge truck that had previously loaded undocumented aliens in the same area in McAllen, Texas, on November 2, 2021, and failed to yield to other agents." It is unclear where the probation officer came up with that statement since the same probation officer said that there was "no information available as to the Dodge truck and its occupants." Despite that, the majority concludes that "it was the same Dodge truck." Regardless, the sighting on November 24 of the alleged Dodge truck that was near the Chevrolet truck on November 2 did not involve any smuggling.

The majority then recounts later portions of the PSR which purportedly support the conclusion that Lopez said he was working with Peña-Rodriguez on November 2, 2021. But the record does not support that conclusion. Further, the PSR does not allege that Lopez gave a statement claiming he was working for Peña-Rodriguez on November 2, 2021. That incident was discussed in paragraph 36, which said in relevant part, that "the undocumented aliens" were "unable to identify Adan Lopez as the driver." Thus, Lopez, who was also undocumented, "was processed administratively and granted voluntary return to Mexico." The PSR does not mention Lopez again until paragraph 44, when he was implicated in an incident on April 5, 2022.

Moreover, Lopez's statements explicitly contradict the majority's conclusion that Peña-Rodriguez was involved in the incident on November 2, 2021. The PSR set out the following in paragraph 48:

> On August 31, 2022, an arrest warrant was issued for Adan Lopez in Related Case 7:22CR01561-001, which was executed on September 1, 2022. In a post-arrest statement, Adan Lopez admitted being the driver of the Chevrolet truck involved in the alien smuggling attempt on November 2, 2021,

16

and indicated he was recruited by an individual, identified as Christian Camacho, to transport the undocumented aliens.

Neither the majority nor the government points to any evidence in the record connecting Christian Camacho to Peña-Rodriguez or even Medina.

Paragraph 48 of the PSR also said that Lopez was deported following the November 2, 2021, incident and did not return to the United States until February 2, 2022, when he was then contacted by an individual known as "Rey," who was connected to Peña-Rodriguez. Lopez admitted that he had recruited Bryan Salgado, Guadalupe Delgado, and Leonel Reyes. Salgado was involved in an incident on April 5, 2022. Delgado was involved in an incident on May 4, 2022. Reyes was involved in an incident on May 25, 2022. Of further significance, paragraph 48 stated that:

> In a subsequent interview on November 1, 2022, Adan Lopez stated that he was in contact with Jessica Pena, via cellular telephone, who would meet him to pay him for his services on behalf of "Rey." During a third interview on November 28, 2022, Adan Lopez stated that Jessica Pena was a smuggling coordinator residing in the United States, who was working with "Rey" from Mexico. Adan Lopez stated that he would meet with Jessica Pena for payment after each successful smuggling event he coordinated. Adan Lopez further stated that he and Jessica Pena coordinated the smuggling events on December 22, 2021, and on January 17, 2022[.] Subpoenaed telephone toll records confirm Adan Lopez' claim.

None of this connects the incident on November 2, 2021, to Peña-Rodriguez. The majority then concludes that the facts that both Lopez and a co-conspirator said cartel members had threatened them and that they both eventually worked for Peña-Rodriguez also support a conclusion that Peña-Rodriguez was responsible for the incident on November 2, 2021. But the record does not support such a leap. Nothing Lopez or the co-conspirator said connected Peña-Rodriguez to the incident on November 2, 2021.

Further, the alleged threats by cartel members were at separate times in 2022 and were about smuggling events in 2022. Moreover, Lopez did not even identify which cartel.

The majority also refers to the government's various arguments at sentencing regarding financial accounts in the names of both Peña-Rodriguez and Medina, and states the following:

> The government also argued that Lopez identified Peña-Rodriguez during his first interview after his arrest, he confirmed the identification in subsequent interviews, his identification was consistent with information from two other individuals who also identified her as a coordinator, and that Whats App messages, statements, and phone communications showed her involvement in the conspiracy going back to 2021.

During the sentencing hearing, the government conceded that there were no financial records connecting Peña-Rodriguez to the incident on November 2, 2021, after the district court reiterated that the PSR only reflected records back to 2022. The government then simply argued that there was some evidence she was involved in "2021." That evidence was the statement by Lopez that he and Peña-Rodriguez coordinated smuggling events on December 22, 2021, and January 7, 2022.[2] Significantly, "[s]ubpoenaed telephone toll records confirm Adan Lopez' claim" that he coordinated smuggling events with Peña-Rodriguez on December 22, 2021, and January 7, 2022. The record does not contain any financial or telephone

---

[2] The majority states that telephone records confirm that Lopez and Peña-Rodriguez "had coordinated various smuggling events together, including those of December 22, 2021, and January 17, 2022." The PSR does not claim that telephone records confirm that Lopez and Peña-Rodriguez coordinated other smuggling events in addition to December 22, 2021, and January 17, 2022.

records establishing that Peña-Rodriguez coordinated or was involved in the incident on November 2, 2021.

The majority says, "[n]otably, records for a Zelle account reflected payments sent and received as far back as February 2020." The PSR included a sentence that said a review of a Zelle account *also utilized* by Medina and Peña-Rodriguez revealed payments "sent between February of 2020 to February of 2023." However, the PSR failed to provide any information as to whose account it was, how many other people *also utilized* it, who made or received those payments, what the payments were for, whether any of the payments were in 2021, or when Peña-Rodriguez began using the account. The PSR failed to provide evidence of any financial records connecting Peña-Rodriguez to the event on November 2, 2021, and the government conceded at sentencing that there were none.

Finally, the majority's reliance on the government's sentencing memorandum and a statement made by counsel is misplaced. The majority includes a footnote that states, "[a]ccording to an earlier government filing, Lopez provided the statement to law enforcement 'that he was working on behalf of' Peña-Rodriguez and her boyfriend on November 2, 2021." The majority is relying on the Government's Sentencing Memorandum and Response to Objections, wherein the government cited only the PSR in generally alleging the following:

> Regarding Paragraph 36, Lopez [sic] statement indicates that he was working on behalf of Defendant Pena and Medina at the time. Lopez's statements have been corroborated through phone records and are consistent with statements of other co-conspirators in this matter. Regarding Paragraph 38, BP obtained phone communications showing Defendants Pena and Medina to be in an intimate relationship and working together to smuggle aliens at that time.

Regarding Paragraph 39, Lopez [sic] statement indicates that he was working on behalf of Defendant Pena and Medina at the time, and coordinate [sic] that incident with Pena. Lopez's statements have been corroborated through phone records and are consistent with statements of other co-conspirators in this matter.

Nowhere does this say that Lopez "stated he was working on behalf of Peña-Rodriguez and her boyfriend on November 2, 2021." Moreover, the district court adopted the PSR, not the Government's Sentencing Memorandum and Response to Objections. While Paragraph 36 of the PSR referred to the incident on November 2, 2021, it made no assertion that Lopez gave a statement claiming that he was working for Peña-Rodriguez at that time, as discussed above herein. Paragraph 38 involved the incident with Medina on December 10, 2021, and made no mention of Lopez. Paragraph 39 involved an incident on December 16, 2021, in which the driver absconded and also made no mention of Lopez. The PSR did not mention Lopez again until paragraph 44, when he was implicated in an incident on April 5, 2022.

I turn now to the majority's claim that "Peña-Rodriguez's counsel specifically acknowledged at sentencing that Lopez had told law enforcement about Peña-Rodriguez's involvement in the November 2, 2021, smuggling incident." While counsel did recount the government's unsupported argument that Lopez implicated Peña-Rodriguez, moments later counsel also argued:

> The writer of the PSR suggests that Juan Lopez was hired by this Defendant, which is not true according to his debrief, in attending the PSR. He was hired by a man named Christian and he indicated that Christian had hired him, and he recruited a slew of other drivers that were involved in this conspiracy that have nothing to do with Ms. Pena.

Again, none of the evidence connects Peña-Rodriguez to the incident on November 2, 2021, or to Christian Camacho, and there is no authority that requires Peña-Rodriguez to rebut evidence that does not exist. Additionally, the finding that there was an unaccompanied minor involved on November 2, 2021, in no way connects Peña-Rodriguez to Lopez on that date. The earliest date that evidence connects Lopez to Peña-Rodriguez is December 22, 2021, and it is confirmed by telephone records. The other events Lopez referenced involving Peña-Rodriguez and Rey were in 2022. Further, there is no evidence connecting Peña-Rodriguez to Christian Camacho at any point. Moreover, neither the majority nor the government points to any evidence that there was only one active smuggling conspiracy or operation between Mexico and the United States in November 2021. To the contrary, they admit there were others during the same time period that did not involve Peña-Rodriguez. The majority's statement that Medina was driving a Dodge truck on November 24, 2021, in no way establishes that Medina owned or drove a Dodge truck on November 2, 2021, or even that it was the same truck. This is particularly so when the PSR explicitly said, "[t]here is no information available as to the Dodge truck and its occupants." Therefore, the PSR's statement that on November 2, 2021, Lopez transported an "unaccompanied minor on behalf of" Peña-Rodriguez or Derly is unsupported. In *United States v. Taylor*, 277 F.3d 721 (5th Cir. 2001), this court reiterated that, "[t]he PSR, however, cannot just include statements, in the hope of converting such statements into reliable evidence, without providing any information for the basis of the statements." *Id.* at 724 (internal marks and citation omitted). Based on the record and the applicable law, the district court erred in imposing a four-level enhancement under U.S.S.G. § 2L1.1(b)(4) for transporting an unaccompanied minor.

Regarding the nine-level enhancement for an offense involving 100 or more aliens under U.S.S.G. § 2L1.1(b)(2)(C), I agree with the majority that

the district court improperly relied on the PSR in holding Peña-Rodriguez accountable for fifteen undocumented aliens apprehended on December 16, 2021, because the facts lacked an adequate evidentiary basis with sufficient indicia of reliability.  The majority then concludes that, even excluding the fifteen undocumented aliens on December 16, 2021, Peña-Rodriguez would still be responsible for 105.  However, excluding the undocumented aliens from the incident on November 2, 2021, puts the total at less than 100.  As a result, the district court clearly erred in imposing the enhancement for smuggling, transporting, or harboring more than 100 undocumented aliens under U.S.S.G. § 2L1.1(b)(2)(C).

For these reasons, I would vacate and remand for resentencing.  Thus, I respectfully dissent in part.